Exhibit A

CENTER *for* BIOLOGICAL DIVERSITY                    *Because life is good.*

July 23, 2024

*VIA FOIAXPRESS*
U.S. Fish and Wildlife Service

Re:     Freedom of Information Act Request: Rangeland Grasshopper and Mormon Cricket
        Suppression Program & Endangered Species Act Consultation

Dear FOIA Officer:

This is a request under the Freedom of Information Act[1] ("FOIA") from the Center for
Biological Diversity ("Center"), a non-profit organization that works to secure a future for all
species hovering on the brink of extinction through science, law, and creative media, and to
fulfill the continuing educational goals of its membership and the general public in the process.

REQUESTED RECORDS

The Center requests from the U.S. Fish and Wildlife Service ("FWS") from January 1, 2023 to
the date that FWS conducts this search: the records that document consultation pursuant to the
Endangered Species Act[2] ("ESA") with the U.S. Department of Agriculture-Animal and Plant
Health Inspection Services' ("APHIS") proposal to conduct chemical treatments to "suppress"
grasshoppers and crickets as part of the Rangeland Grasshopper and Mormon Cricket
Suppression Program in 17 Western States.

**Record Custodians & Search Parameters to Start Email Search:**

1. Doug_laye@fws.gov - Doug Laye, Section 7 Consultation Coordinator, R6, OR the FWS
   employee who took on Mr. Laye's role as coordinator of ESA consultation with APHIS
   on the grasshopper/cricket insecticide spraying program.

2. Andrew_raabe@fws.gov - Andrew Raabe, Branch of National Consultations, OR the
   FWS employee who took on Mr. Raabe's role in the national ESA consultation with
   APHIS on the grasshopper/cricket insecticide spraying program.

3. Amanda_ciurej@fws.gov - Amanda Ciurej, Nebraska Field Office, OR the FWS
   employee who may now be in Ms. Ciurej's role with respect to the ESA consultation with
   APHIS on the grasshopper/cricket insecticide spraying program.

---

[1] 5 U.S.C. § 552, *as amended.*
[2] 16 U.S.C. §§ 1531-1544.

4.  Eliza_hines@fws.gov - Eliza Hines, of the Nebraska Field Office, OR the FWS employee who may now be in Ms. Hines' role with respect to the ESA consultation with APHIS on the grasshopper/cricket insecticide spraying program.

5.  Any of the following FWS employees who had involvement circa 2020, OR the FWS employee who may now be in any role with respect to the ESA consultation with APHIS on the grasshopper/cricket insecticide spraying program:

    a.  Daniel_brown@fws.gov
    b.  Michelle_durflinger@fws.gov
    c.  Damian_higgins@fws.gov
    d.  Maria_boroja@fws.gov
    e.  Sara_pollack@fws.gov
    f.  Jodi_bush@fws.gov
    g.  Karen_newlon@fws.gov
    h.  Jeff_berglund@fws.gov
    i.  Fw6_esa_practitioner@fws.gov
    j.  Fw6_es_project_leaders@fws.gov
    k.  Allison_vendramel@fws.gov
    l.  Natalie_gates@fws.gov
    m.  Scott_larson@fws.gov
    n.  Ellen_mcbride@fws.gov
    o.  Michael_long@fws.gov
    p.  Michael_senn@fws.gov
    q.  Karen_myers@fws.gov
    r.  Cindy_hall@fws.gov
    s.  Jeffrey_hill@fws.gov
    t.  Kimberly_dickerson@fws.gov
    u.  Kimberly_smith@fws.gov
    v.  Jessica_n_johnson@fws.gov

6.  Emails from APHIS staff, domain "@aphis.usda.gov" and mentioning grasshopper, or cricket, or carbaryl, or diflubenzuron, or malathion, or chlorantraniliprole. Employees may include but are not limited to:

    a.  Jim.E.Warren@aphis.usda.gov OR any APHIS employee taking on Dr. Warren's role in this ESA consultation.

    b.  Gary.D.Adams@aphis.usda.gov or any APHIS employee taking on Mr. Adams' role in this ESA consultation.

For this request, the term "records" refers to documents, correspondence (including inter and/or intra-agency correspondence as well as correspondence with entities or individuals outside the federal government), *emails including attachments*, letters, notes, recordings, telephone records, telephone notes, telephone logs, text messages, chat messages, minutes, memoranda, comments, files, presentations, consultations, biological opinions, assessments, evaluations, schedules,

papers published and/or unpublished, reports, studies, photographs and other images, data (including raw data, GPS or GIS data, UTM, LiDAR, etc.), maps, and/or all other responsive records, in draft or final form.

This request is not meant to exclude any other records that, although not specially requested, are reasonably related to the subject matter of this request.  If you or your office have destroyed or determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption.[3]

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release.  Please include a detailed ledger which includes:

1.    Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2.    Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material.  Such statements will be helpful in deciding whether to appeal an adverse determination.  Your written justification may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such records to my attention at the address below within the statutory time limit.[4]

The Center is willing to receive records on a rolling basis.

<u>THE FREEDOM OF INFORMATION ACT</u>

The purpose of FOIA is to "open agency action to the light of public scrutiny."[5]  President Biden emphasized the "presumption of openness" with regard to FOIA.[6]  Attorney General Merrick Garland's memorandum guides agencies to 1) withhold records only if they reasonably foresee that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates or disclosure is prohibited by law, 2) make proactive disclosures, 3) remove barriers

---

[3] FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).
[4] 5 U.S.C. § 552(b).
[5] *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).
[6] *See Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act Guidelines*, (Mar. 15, 2022).

to access, and 4) ensure fair and effective FOIA administration.[7]  In another prior memorandum, Former Attorney General Eric Holder set forth the "foreseeable harm" standard for defending agency decisions to withhold information under FOIA.[8]  Thus, the DOJ will defend an agency's denial of a FOIA request "only if (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the statutory exemptions, or (2) disclosure is prohibited by law."[9]  These authorities remain in effect.

FOIA's "frequently requested record" provision was enacted as part of the 1996 Electronic Freedom of Information Act Amendments and requires all federal agencies to give "reading room" treatment to any FOIA-processed records that, "because of the nature of their subject matter, the agency determines have become the subject of subsequent requests for substantially the same records."[10]  Also, enacted as part of the 2016 FOIA Improvement Act, FOIA's Rule of 3 requires all federal agencies to proactively "make available for public inspection in an electronic format" "copies of records, regardless of form or format … that have been released to any person … and … that have been requested 3 or more times."[11]  Therefore, we respectfully request that you make available online any records that the agency determines will become the subject of subsequent requests for substantially the same records, and records that have been requested three or more times.

Finally, agencies must preserve all the records requested herein while this FOIA is pending or under appeal.  The agency shall not destroy any records while they are the subject of a pending request, appeal, or lawsuit under the FOIA.[12]  If any of the requested records are destroyed, the agency and responsible officials are subject to attorney fee awards and sanctions, including fines and disciplinary action.  A court held an agency in contempt for "contumacious conduct" and ordered the agency to pay plaintiff's costs and fees for destroying "potentially responsive material contained on hard drives and email backup tapes."[13]  In another case, in addition to imposing a $10,000 fine and awarding attorneys' fees and costs, the court found that an Assistant United States Attorney prematurely "destroyed records responsive to [the] FOIA request while

---

[7] *See id.*; Former President Obama reinforced FOIA's strong presumption of disclosure with regard to all FOIA decisions. *See Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act*, 74 Fed. Reg. 4683 (Jan. 21, 2009) (directing agencies to administer FOIA under a presumption that guidelines reinforce a commitment to open government, encouraging federal agencies to both "make discretionary releases of information" and to "make partial disclosures" when an agency determines full disclosure is not possible).  *See also Former Attorney General Eric Holder's Memorandum for Heads of Executive Departments and Agencies* (Mar. 19, 2009).

[8] *Id.*

[9] *See id.*

[10] *Id.* § 552(a)(2)(D)(ii)(I).

[11] *Id.* § 552(a)(2)(D)(ii)(II).

[12] *See Chambers v. U.S. Dept. of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act").

[13] *Landmark Legal Found. v. EPA*, 272 F. Supp.2d 59, 62 (D.D.C. 2003); *see also Judicial Watch, Inc. v. Dept. of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), *aff'd in relevant part*, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed).

[the FOIA] litigation was pending" and referred him to the Department of Justice's Office of Professional Responsibility.[14]

## FORMAT OF REQUESTED RECORDS

FOIA requires FWS to provide records in a readily accessible electronic format and in the format requested.[15]  "Readily accessible" means text-searchable and OCR-formatted.[16]  Pursuant to this requirement, we hereby request that you produce all records in an electronic format and in their native file formats.  Additionally, please provide the records in a load-ready format with a CSV file index or Excel spreadsheet.  If you produce files in .PDF format, then please omit any "portfolios" or "embedded files."  Portfolios and embedded files within files are not readily accessible.  Please do not provide the records in a single, or "batched," .PDF file.  We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption.[17]  Please correlate any redactions with specific exemptions under FOIA.

## RECORD DELIVERY

We appreciate your help in expeditiously obtaining a determination on the requested records.  As mandated in FOIA, we anticipate a reply within 20 working days.[18]  Failure to comply within the statutory timeframe may result in the Center taking additional steps to ensure timely receipt of the requested materials.  Please provide a complete reply as expeditiously as possible.  You may email or mail copies of the requested records to:

Ann K. Brown
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
foia@biologicaldiversity.org

If you find that this request is unclear, or if the responsive records are voluminous, please email me to discuss the scope of this request.

---

[14] *Jefferson v. Reno*, 123 F. Supp. 2d 1, 6 (D.D.C. 2000).
[15] 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").
[16] *See id*.
[17] *Id.* § 552(b).
[18] *Id.* § 552(a)(6)(A)(i).

## REQUEST FOR FEE WAIVER

FOIA was designed to provide citizens a broad right to access government records.  FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to."[19]  In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard.[20]  FOIA's fee waiver requirement is "liberally construed."[21]

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as the Center access to government records without the payment of fees.  Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*."[22]  As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information."[23]

### I.        The Center Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester."[24]  The U.S. Department of the Interior ("Interior") FOIA regulations that govern FWS establish the same standard.[25]

Accordingly, when determining whether a request is in the public interest, FWS must consider: (1) how the subject of the requested records concerns "the operations or activities of the Federal government;" and (2) how disclosure is "likely to contribute" significantly to an understanding of those government operations or activities, including (i) how the contents of the records are meaningfully informative; (ii) what the logical connection is between the content of the records and the operations or activities of the federal government; (iii) how disclosure will contribute to an understanding of a reasonably broad audience of persons interested in the subject; (iv) the Center's expertise in the subject area, as well as its identity, vocation, qualifications, and plan to disclose the information in a manner that will be informative to the understanding of a reasonably broad audience of persons interested in the subject; (v) the requester's ability and intent to disseminate the information to a reasonably broad audience of persons interested in the subject; (vi) whether the records would confirm or clarify data that has been previously released;

---

[19] *NARA v. Favish*, 541 U.S. 157, 171 (2004) quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted).
[20] 5 U.S.C. § 552(a)(4)(A)(iii).
[21] *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).
[22] *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (emphasis added).
[23] 132 Cong. Rec. S. 14298 (statement of Senator Leahy).
[24] 5 U.S.C. § 552(a)(4)(A)(iii).
[25] *See* 43 C.F.R. § 2.45(a) – (b).

and (vii) how the public's understanding of the subject in question will be enhanced to a significant extent by the disclosure.[26]

When these requirements are satisfied and any commercial interest is not the primary interest furthered by the request, this balancing test shows a waiver or reduction of fees is justified.

In determining whether disclosure of the requested records is primarily the requester's commercial interest (based the requester's intended use of the information), Interior will consider: (1) whether the requested records would further any commercial interest of the requester; (2) if so, whether that is the primary interest furthered by the request by balancing the commercial interest against the public interest in disclosure of the records; (3) any explanatory information regarding these considerations that the requester provides; (4) whether the public interest is greater than any identified commercial interest in disclosure; (5) if the requester's commercial interest would be furthered by disclosure, whether the public interest in disclosure would be greater than any commercial interest in the records.[27]

As shown below, the Center meets each of these factors.

   A.   The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of FWS, a government agency. This FOIA request will provide the Center and the public with crucial insight into the environmental impact of APHIS' continued application of insecticides to kill grasshoppers and crickets on rangelands, and whether FWS fulfilled its duties under the ESA in consulting with APHIS. The requested records are likely to contribute to an understanding of government operations and activities, and therefore the Center meets this factor.

   B.   Disclosure is in the Public Interest because the Records Are "Likely to Contribute" to an Understanding of Government Operations or Activities.

The records requested through this FOIA request are likely to contribute to the understanding of government operations and activities, meaningfully inform the public about those operations and activities, and contribute to the public's increased understanding of those operations and activities. As described further below, the requested records meet the requirements to be considered in the public interest.

      (i)   The Contents of the Records Are Meaningfully Informative.

Grasshoppers and crickets occur naturally and are part of the western "rangeland ecosystem," providing food for wildlife and an important role in nutrient cycling. Nonetheless, APHIS maintains that outbreaks of these insects can compete for food with livestock and other grazing plant-eating species. The agency's solution is to apply up to four different insecticides to kill grasshoppers and crickets in 17 Western States. FWS condoned any effects of the use of these

---

[26] *Id.* § 2.48(a)(1) – (2).
[27] *Id.* at § 2.45(a)(2)(b).

insecticides on federally listed wildlife and plants when it "concurred" in APHIS' determinations that widespread use of these insecticides was not likely to adversely affect any endangered or threatened species.  Disclosure of the requested records will allow the Center to convey information to the public about the facts surrounding FWS' determination to give a pass to APHIS.  Once the information is made available, the Center will analyze it and present it to its over 1.7 million members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the Center meets this factor.

> (ii)    There Is a Logical Connection Between the Content of the Records and the Operations or Activities of the Federal Government.

There is a logical connection between the requested records' content and the operations and activities of the federal government.  It is clear that a federal agency's compliance with federal law is a specific and identifiable activity of the government, and in this case it is the executive branch agency of FWS.[28]  The requested records will aid the public in understanding whether the government's actions are consistent with the ESA.

Thus, because the requested records will contribute to public understanding of this topic, the Center meets this factor.

> (iii)    Disclosure Will Contribute to the Understanding of a Reasonably Broad Audience of Persons Interested in the Subject.

Activities of FWS generally, and specifically whether the agency fulfilled its duties under the ESA, are areas of interest to a reasonably broad segment of the public.  The Center will use the information it obtains from the disclosed records to educate the public at large about this topic.[29]

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of what conservation efforts are needed to mitigate the effects of the government's grasshopper suppression program.  The public is always well served when it knows how the government conducts its activities, particularly matters touching on legal questions.  Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about this topic.

---

[28] *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor.") (internal quotations omitted).

[29] *See W. Watersheds Proj. v. Brown*, 318 F. Supp.2d 1036, 1040 (D. Idaho 2004) (finding that "WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how … management strategies employed by the BLM may adversely affect the environment").

(iv)     The Center Has Expertise in this Subject Area and Plans to Disclose the
         Information in a Manner that Will Be Informative to the Understanding of a
         Reasonably Broad Audience of Persons Interested in the Subject.

The Center is a non-profit organization that informs, educates, and counsels the public regarding environmental issues, policies, and laws relating to environmental issues.  The Center has been substantially involved in the activities of numerous government agencies for over 30 years and has consistently displayed its ability to disseminate information granted to it through FOIA.

In consistently granting the Center's fee waivers, agencies have recognized that: (1) the information that the Center requested contributes significantly to the public's understanding of government operations and activities; (2) the information enhances the public's understanding to a greater degree than currently exists; (3) the Center has the expertise to explain the information to the public; (4) the Center has the ability to disseminate the information to the public; (5) and that the news media recognizes the Center as an established expert in the field of imperiled species, biodiversity, and impacts on protected species.  The Center's track record of active participation in oversight of governmental activities and decision making, and its consistent contribution to the public's understanding of those activities as compared to the level of public understanding prior to disclosure are well established.

Once the agency releases the requested records, the Center will analyze the information and present it to its 1.7 million members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

(v)      The Center Has the Ability and Intent to Disseminate the Information to a
         Reasonably Broad Audience of Persons Interested in the Subject.

The Center's work appears in about 4,000 news stories online and in print, radio, and TV per month, including regular reporting in such important outlets as *The New York Times*, *CNN*, *The Washington Post*, *National Public Radio*, *the Associated Press*, *Los Angeles Times*, and *USA Today*.  Many media outlets have reported on the plight of endangered and threatened species utilizing information obtained by the Center from state and federal agencies.  In 2023, more than 3.6 million people visited the Center's extensive website, viewing pages almost 6 million times.  In 2023, more than 1.6 million actions were completed by more than 1.7 million members and supporters.  Last year the Center sent over 121,000 printed newsletters to more than 79,000 members.  More than 635,000 people follow the Center on Facebook, and there are regular postings regarding the protection of species at risk of imminent extinction.  The Center also regularly tweets to more than 142,500 followers on Twitter, and has more than 57,100 followers on Instagram.  The Center intends to use any or all of these far-reaching media outlets to share with the public information obtained as a result of this request.

Furthermore, public oversight and enhanced understanding of FWS's duties is absolutely necessary.  In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably-broad audience of persons interested in the subject.[30]  The Center

---

[30] *Carney*, 19 F.3d 807.

need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity."[31]  It is sufficient for the Center to show how it distributes information to the public generally.[32]

> (vi)    The Records Were Not Previously Released, So They Would Neither Confirm Nor Clarify Data That Has Been Previously Released.

The government has not previously released the requested records, as the Center has specifically requested the records that have not been released previously.[33]  Indeed, the public is not currently able to easily evaluate the requested records that are not in the public domain.[34]  As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations… ."[35]  Thus, the requested records will neither confirm nor clarify data that was previously released.

> (vii)    The Public's Understanding of the Subject in Question Will Be Enhanced to a Significant Extent by the Disclosure.

The Center is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of whether the government is complying with the law, as compared to the level of public understanding that exists prior to the disclosure.  Indeed, public understanding will be *significantly* increased as a result of disclosure because the requested records will help reveal more about this subject matter.  Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA.  Thus, the Center meets this factor as well.

> C.  Obtaining the Requested Records is of No Commercial Interest to the Center.

In deciding whether the fee waiver request meets the requirements in § 2.45(a)(2)(b), Interior must consider that the Center has no commercial interest that would be furthered by the requested disclosure.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to the Center's role of educating the general public.  Founded in 1994, the Center is a 501(c)(3) nonprofit conservation organization (EIN: 27-3943866) with more than 1.7 million members and online activists dedicated to the protection of endangered and threatened species and wild places.  Even if the Center did have a primary interest furthered by the request, the

---

[31] *Judicial Watch*, 326 F.3d at 1314.

[32] *Id.*

[33] *See Cmty. Legal Servs.*, 405 F. Supp. 2d at 560 (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public.").

[34] It is immaterial whether any portion of the Center's request may currently be in the public domain because the Center requests considerably more than any piece of information that may currently be available to other individuals.  *See Judicial Watch*, 326 F.3d at 1315.

[35] 835 F.2d 1282, 1286 (9th Cir. 1987),

public interest in disclosure of the records would far outweigh any commercial interest recognized by the Center.

Thus, the Center has no commercial interest and will realize no commercial benefit from the release of the requested records.

II.      Conclusion

For all of the foregoing reasons, the Center qualifies for a full fee waiver.  We hope that FWS will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at foia@biologicaldiversity.org.  All records and any related correspondence should be sent to my attention at the address below.

Sincerely,

Ann K. Brown
Open Government Coordinator
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
foia@biologicaldiversity.org